BRUCE FORNEY, APPELLANT, v. BOX BUTTE COUNTY BOARD OF EQUALIZATION, APPELLEE.

582 N.W. 2d 631

Filed July 28, 1998.    No. A-97-684.

Dean S. Forney, of Forney Law Office, for appellant.

Laurice M. Margheim, of Curtiss, Moravek, Curtiss & Margheim, for appellee.

MILLER-LERMAN, Chief Judge, and SIEVERS and MUES, Judges.

MUES, Judge.

## INTRODUCTION

Bruce Forney appeals the order of the Nebraska Tax Equalization and Review Commission (TERC) affirming the decision of the Box Butte County Board of Equalization (Board) valuing his newly constructed residence located at 100 Burnham Drive in Alliance at $325,534 for tax year 1996. Forney's primary argument on appeal is that a comparable sales analysis is inappropriate, as is a construction cost valuation. For the following reasons, we affirm TERC's order.

## BACKGROUND

Forney's house is located in a newly developed neighborhood in Alliance. He purchased the two lots on which the house sits

in 1990 for $22,000. The house was constructed in 1994 and 1995. In tax year 1996, the county assessor valued the property at $434,666—$26,870 for the land and $407,796 for the house itself. On June 27, 1996, Forney filed a property valuation protest, requesting that the land and building be valued in a range from $234,000 to $298,886. As a result, the Board conducted another appraisal, and the valuation was reduced to $325,534—$26,870 for the land and $298,664 for the house.

Forney then filed an appeal to TERC, alleging that the assessed value of $325,534 was more than the actual or market value of $265,000. A TERC hearing was held on May 28, 1997. Forney called two witnesses.

Jim Weinman has been a real estate broker in Alliance for 15 to 20 years. He testified that he is often called upon to do market surveys or market analysis for residential property in Alliance and that he relies primarily on the comparable sales approach when he does a market analysis. However, Weinman admitted that this approach was limited in the instant case because there had been only one other comparable property sold in Alliance in recent years and that home, which was less than 1 year old, had 1,000 square feet less space than the Forney residence and was on a single lot. He explained that by using the comparable sales approach, which compares the property being appraised with similar properties sold in the recent past, he found the sales price per square foot of this one property and by using that figure he determined the value of Forney's 3,500-square-foot house to be $295,400.

However, Weinman explained that he was not sure that there is a market in Alliance for this price range because there are very few qualified buyers in this price range in Alliance, those who are qualified generally build their own homes, and consequently, homes generally resell for less than their replacement costs. Weinman further testified that the value of the highest priced house ever sold in Alliance was $207,000. In a letter to Forney dated July 3, 1996, Weinman opined that "it would be extremely difficult to breach the $200,000 barrier for any property in the Alliance market."

When asked if he was a "qualified appraiser," Weinman stated that he was not. However, he was familiar with appraisal

concepts, including replacement cost, but testified that he did not know anything about the replacement cost of this house and that in his analysis he did not consider the fact that this house sits on two lots. He also acknowledged that in Alliance, property values are increasing, sales prices are increasing, and the number of larger homes on the market is increasing.

Todd Peterson, president of First Security Bank in Mitchell, testified that banks normally base their loans on appraised value, which they consider to be market value, rather than construction or replacement cost. He stated that a bank normally loans up to 80 percent of appraised or market value, but that in this case the bank loaned even more due to the strength of Forney's financial statement. Forney's mortgage loan was $350,000, and Peterson testified that the cost of construction was $375,000. Peterson also testified that at least two homes in Alliance have sold for prices below their construction costs.

After the testimony of these two witnesses, Forney rested. The Board called Forney, who testified that the contract price for his home was $250,000 and that he had overrun that by approximately $100,000. Forney stated that he had a $350,000 mortgage on the property but may have utilized additional funds to construct his home. However, he felt that his house should be valued at $265,000 because there is no market to sell his home and, thus, its market value was actually much lower. He submitted an appraisal from Hitchcock Appraisal Service which by using the sales comparison approach valued the property's market value at $265,000 to $290,000. This appraisal compared two Alliance properties, one of which sold for $150,000, or $82.60 per square foot, and the other for $207,000, or $84.39 per square foot, and one Scottsbluff property which sold for $250,000, or $90.42 per square foot, to Forney's residence. The Alliance property which sold for $207,000 was the highest priced home ever sold in Alliance, but Hitchcock noted that this amount was well under the estimated cost to build the property, which was originally listed at $249,000. This home was built by the same builder that built Forney's home and had many special features. However, in the appraisal Sharon Hitchcock noted that she departed from standard appraisal practices by limiting her

appraisal to the sales comparison approach because she had been requested to do so by Forney and his attorney.

Marilyn Lore, Box Butte County assessor, testified that John A. Tuttle and Company does the appraisal work for the county. The practice John Tuttle follows is to take pictures and measurements and bring them to the assessor's office, and a Marshall-Swift pricing system is then applied to determine a property's tax valuation. Marilyn Lore testified that Forney's house was assessed in the same manner, using the same factors used for other houses in Alliance, when the initial $434,000 figure was arrived at. When the Board reevaluated the property due to Forney's protest, Tuttle performed that reevaluation.

Tuttle testified that he has been a real estate appraiser for 30 years. He explained that when he has limited comparable sales for purposes of making a sales comparison analysis of value, he uses the replacement cost approach to help him determine an accurate fair market valuation. Due to the limited sales in Alliance, he used the replacement cost approach in determining the value of Forney's property. He determined the "replacement cost new" of Forney's house based on square footage, size, and quality of construction to be $300,584. He then reduced this figure 1 percent for physical depreciation of the property ($3,006) and 25 percent for economic/location depreciation factor ($75,146), which accounts for the fact that the home was located in Alliance, which has a limited market for houses in this price range, and considers that homes generally resell for less than the replacement cost.

Tuttle explained that the reduction for this economic/location factor was due to a 1990 study by the Board comparing replacement cost to actual sale value in Box Butte County. From this study, the Board determined that replacement cost should be uniformly reduced on all Alliance residential properties by 20 percent to arrive at an actual value for assessment purposes. The normal location depreciation factor for Alliance was 20 percent; thus, the location depreciation factor of 25 percent used on Forney's home was 5 percent greater than that used in determining the home values of any other residents of Alliance and, according to Tuttle, was an accident in Forney's favor.

With these adjustments, the total replacement value of the house was $222,432. The price was then adjusted to $299,282—upward 17 percent for 1995 and 15 percent for 1996—in recognition of a State Board of Equalization mandate to equalize property values. This state mandate was the result of a sales assessment ratio study which showed that assessed values for ad valorem tax purposes in Box Butte County needed to be raised to bring them up to actual value. Tuttle stated that he had conducted a market conditions analysis which showed that the 1990 study giving a 20-percent location factor adjustment was " 'a generous amount under present market conditions' " and was undoubtedly the reason the State Board of Equalization required the increase in residential values by 17 percent in 1995 and 15 percent in 1996.

Tuttle also reduced the value of Forney's home by $618 because there was no floor covering in the basement. The final assessed value for the house was $298,664. The land was assessed at $26,870 for a total assessed value of the Forney property at $325,534. This is the figure adopted by the Board.

Susan S. Lore, a Box Butte County commissioner and a general certified appraiser, testified that the 20-percent economic/location factor that is normally applied to properties in Alliance was designed to adjust the replacement cost of properties downward to reflect actual market value. She explained that when there are limited comparable sales, an appraiser generally goes outside the area or looks at other approaches to value such as replacement cost. She also noted that the Hitchcock appraisal departed from standard appraisal practices.

TERC affirmed the decision of the Board appraising the residence at $325,534. In its analysis, TERC noted, inter alia, that the fair market value of the property was $325,534, that this value was supported by evidence, and that Forney had not adduced evidence to establish that the valuation was unreasonable or arbitrary. Forney timely appealed.

## ASSIGNMENTS OF ERROR

Forney argues that TERC erred in affirming the Board's assessed value of the property, as it was in excess of its actual value, i.e., market value. In particular, he contends that because

of its size and location and the lack of qualified buyers, the value is not more than $265,000.

## STANDARD OF REVIEW

Our review of a final decision of TERC shall be conducted for error on the record of TERC. Neb. Rev. Stat. § 77-5019 (Reissue 1996). When reviewing an order for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *J.C. Penney Co. v. Lancaster Cty. Bd. of Equal.*, 6 Neb. App. 838, 578 N.W.2d 465 (1998).

## ANALYSIS

In determining whether TERC's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable, we note that TERC shall affirm the action taken by the county board of equalization unless evidence is adduced establishing that the action taken by the board was unreasonable or arbitrary or unless evidence is adduced establishing that the property of the appellant is assessed too low. Neb. Rev. Stat. § 77-1511 (Reissue 1996).

There is a presumption that a county board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board. *Lancaster Cty. Bd. of Equal. v. Condev West, Inc., ante* p. 319, 581 N.W.2d 452 (1998).

The burden of persuasion imposed on the complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon the taxpayer's property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional

will or failure of plain duty, and not mere errors of judgment. *Id.* It must be demonstrated by evidence that the assessment is grossly excessive and is a result of arbitrary or unlawful action, and not a mere error of judgment. *Id.* Thus, the Board's decision was properly affirmed by TERC unless Forney adduced sufficient competent evidence establishing that the action of the Board was unreasonable or arbitrary. Therefore, we must determine whether Forney adduced such evidence.

■ Neb. Rev. Stat. § 77-112 (Reissue 1996) provides that actual value of real property for purposes of taxation shall mean the market value of real property in the ordinary course of trade. Actual value may be determined using professionally accepted mass appraisal techniques, including, but not limited to (1) comparison with sales of real property of known or recognized value, taking into account location, zoning, and current functional use (comparable sales approach); (2) earning capacity of the real property (income approach); and (3) reproduction cost less depreciation (replacement cost approach). *Id.*

■ It is true that the purchase price of property may be taken into consideration in determining the actual value thereof for assessment purposes, together with all other relevant elements pertaining to such issue; however, standing alone, it is not conclusive of the actual value of property for assessment purposes. Other matters relevant to the actual value thereof must be considered in connection with the sale price to determine actual value. Sale price is not synonymous with actual value or fair market value. *Lancaster Cty. Bd. of Equal. v. Condev West, Inc., supra.*

Essentially, Forney argues that the value of his property is not properly determined by the cost of construction or on the basis of sale prices of homes 60 miles away in Gering and Scottsbluff. He attempts to establish through his witnesses that the actual value of his house is $265,000.

The evidence Forney presented to TERC consisted of two witnesses and a limited appraisal using only a sales comparison approach. Weinman testified that if replacement cost was used and was figured at the Alliance average of $130 per square foot, Forney's house would have a value of $455,000. Obviously, the Board did not use this value. Weinman testified to a value of

$295,400 based on what he called a comparable sales approach. However, his approach used only one comparison, a substantially smaller house on a single lot. Weinman testified that he had no opinion of the "market value" for Forney's home because actual market value can be determined only by placing the home on the market and that he was not a "qualified appraiser," which we take to mean that he was unlicensed. See Neb. Rev. Stat. § 76-2210.01 (Reissue 1996). Further, he did not pretend to have made any effort to consider the replacement cost of this home and failed to consider the second lot in arriving at his opinion of value.

Forney's other witness, Peterson, testified generally that homes in Alliance are selling for less than their construction costs and that banks determine loan amounts based upon appraised value, which he felt was the same as market value. However, he offered no evidence of what the "appraised value" of Forney's house was. Rather, he simply testified that the bank had given Forney a $350,000 mortgage on this property, which property had cost Forney $375,000 to construct. Forney himself testified that it cost $350,000 to build this house, which did not consider the cost of the lots, an additional $22,000. In short, Peterson's testimony did little to rebut the opinion of Tuttle which considered replacement cost reduced by factors of physical depreciation and location, a downward adjustment of 26 percent (1 percent physical, 25 percent location) from the replacement cost figure as determined by him.

The Hitchcock appraisal (with a market value range of $265,000 to $290,000) was admittedly restricted at the request of Forney and his attorney to a sales comparison approach, a departure from standard appraisal techniques according to the author of the appraisal.

Although Forney challenges Tuttle's opinion because it involved his consideration of houses sold in the Scottsbluff-Gering area, some 60 miles away, Forney relies heavily on Hitchcock's appraisal, which also used at least one such sale as a "comparable."

It is true that no similar property has been sold in Alliance and that available buyers for such a property are not plentiful. But this does not translate into a conclusion that the home has

no market value or that the actual value is incapable of determination using the methods recognized in § 77-112. Section 77-112 requires use of applicable statutory factors, individually or in combination, to determine the actual value of real estate for tax purposes. See *First Nat. Bank v. Otoe Cty.,* 233 Neb. 412, 445 N.W.2d 880 (1989). In the instant case, the appraisal of Tuttle, adopted by the Board, used the reproduction or replacement cost approach in combination with comparable sales of other properties in the general area over several years, taking into account such things as location, age, and quality of construction of the properties. Tuttle's *method* of arriving at actual value is not attacked by Forney, who focuses instead on the lack of qualified buyers in Alliance to buy his home and on the irrelevancy of construction cost in arriving at actual value. We do not view Tuttle's appraisal as relying on Forney's actual cost of construction. And the lack of a current available buyer for the house cannot be the determining guidepost for valuation, any more than could be Forney's lack of desire to sell it. The whole concept of determining value must *assume* both a willing buyer and seller.

After reviewing the record, we conclude that Forney has failed to present sufficient evidence to overcome the presumption that the Board faithfully performed its duties and acted upon sufficient competent evidence and, thus, that Forney has not satisfied his burden of proving that the Board's action in valuing his property at $325,534 was arbitrary, capricious, or unreasonable. Therefore, TERC properly affirmed the Board's assessed value of $325,534. See § 77-1511.

We note in our review of the evidence that it is apparent that Forney received several "breaks" at various phases of the assessment process. First, in determining "replacement cost new," Tuttle used figures based on "very good" quality rather than "excellent" quality, despite Tuttle's testimony that the house was in the excellent category and despite every indication in the record that it was in the excellent category. This lowered the "replacement cost new" figure by approximately $80,000. The replacement cost new figure for "very good" quality was $300,584, some $50,000 less than Forney actually spent in constructing the house in 1994 and 1995. Second, Forney mistak-

enly received the benefit of a 25-percent reduction for the "location" factor, a 5-percent greater reduction than any other property owner in Alliance received. This reduced the value of his residence an additional $15,000. We are not suggesting that Forney was not entitled to these additional concessions, but it seems clear that he did not prove by clear and convincing evidence that the valuation is grossly excessive when compared with other properties. See *Lancaster Cty. Bd. of Equal. v. Condev West, Inc., ante* p. 319, 581 N.W.2d 452 (1998).

Our review of a final decision of TERC is conducted for error on the record of TERC. § 77-5019. When reviewing an order for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *J.C. Penney Co. v. Lancaster Cty. Bd. of Equal.,* 6 Neb. App. 838, 578 N.W.2d 465 (1998). TERC's order affirming the Board's decision regarding valuation of the subject property is affirmed, as the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

AFFIRMED.